## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | |
|---|---|
| **CHARLES RICHARDSON** | **CASE NO.  2:21-CV-03522** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **TANDEM DIABETES CARE INC** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is "Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6)" (Doc. 28) wherein Defendant, Tandem Diabetes Care, Inc. ("Tandem") moves to dismiss Plaintiff's Petition and First Supplemental and Amending Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). As of this date, Plaintiff has not filed an opposition and the time for doing so has now lapsed.

## INTRODUCTION

This is a product liability action arising from Plaintiff/decedent Kathy Richardson's use of Tandem's t:slim X2 insulin pump with Basal-IQ technology, serial number 680492, a Class III medical device determined by the Food and Drug Administration to be safe and effective through the premarket approval ("PMA") process (referred to herein at times as the "insulin pump").

Plaintiff, Charles Richardson, is the surviving spouse of Kathy Richardson. Mrs. Richardson was a lifelong diabetic requiring insulin.[1] In 2020, Tandem provided Mrs.

---

[1] Petition for Damages, ¶ 2, Doc. 1-2.

Richardson a "reconditioned" insulin pump—t:slim X2, Basil IQ.[2] The insulin pump malfunctioned in July 2020, causing Mrs. Richardson to seek emergency medical care on several occasions.[3] On or about August 5, 2020, the insulin pump malfunctioned allegedly causing Mrs. Richardson's death. Mr. Richardson is seeking survival and death damages, including mental anguish and emotional distress, loss of consortium, and medical and funeral expenses.

## RULE 12(b)(6) STANDARD

Rule 12(b)(6) allows for dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider documents referenced in and central to a party's claims, as well as matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished).

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success

---

[2] *Id.* ¶ 4.
[3] *Id.*, ¶ 5.

but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund v. (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## LAW AND ANALYSIS

Defendant argues that the Amended Complaint must be dismissed for two independent reasons. (1) Plaintiffs' claims are preempted by the Medical Device Amendments ("MDA") to the Federal Food, Drug, and Cosmetics Act. See 21 U.S.C. § 360k(a) and/or (2) even without preemption, Plaintiffs have failed to plead sufficient facts to support any theories of liability under the Louisiana Products Liability Act ("LPLA").

*Preemption*

Defendant argues that Plaintiff's claims are preempted because (a) they are centered on the safety and effectiveness of a Class III medical device approved by the FDA through the agency's exhaustive and comprehensive PMA process, and (b) their claims seek to impose state-law requirements through the LPLA on the design and manufacture of the device that are different from, or in addition to, the federal requirements already imposed by the FDA.

The t:slim X2 insulin pump is intended for the subcutaneous delivery of insulin, at set and variable rates, for the management of diabetes mellitus in persons requiring insulin.[4] The insulin pump consists of the t:slim X2 insulin pump, which contains the Basal-IQ technology, and a Continuous Glucose Monitor ("CGM").[5]

---

[4] See FDA approval letter at https://www.accessdata.fda.gov/cdrh_docs/pdf18P180008A.pdf.
[5] *Id.*

The System provides responsive insulin delivery using CGM values to reduce the frequency and duration of low-glucose events by predicting glucose levels 30 minutes ahead, suspending insulin when necessary, and then resuming insulin delivery.[6]

The FDA has the exclusive authority to regulate and oversee medical devices. 21 U.S.C. § 360k(a). Different types of devices receive varying levels of FDA scrutiny. 21 U.S.C. § 360c(a)(1)(C)(ii). Devices that support or sustain human life, or present a potential unreasonable risk of injury, are designed "Class III" devices. *Id.* Such devices must receive premarket approval ("PMA") from the FDA before being sold. *Buckman Co., v. Plaintiff's Legal Comm.*, 531 U.S. 341, 344 (2001). It is a matter of public record that on June 21, 2018, the FDA granted premarket approval for insulin pump and classified it as a Class III device pursuant to premarket approval No. P180008.[7]

In enacting the Medical Device Amendments of 1976 ("MDA"), Congress granted FDA the exclusive authority to regulate medical devices, thereby creating a comprehensive "regime of federal oversight." *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 316 (2008). Congress did so to ensure that safe, effective medical devices are readily available to treat patients in need of life-saving or disability-averting care. *Cenac v. Hubbell*, 2009 WL 10678961 (E.D. La July 31, 2009).

---

[6] See https://www.accessdata.fda.gov/cdrd_docs/pdf18/P180008B.pdf

[7] The Court may take judicial notice of matters of public record. See *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (approving use of judicial notice on publicly available FDA documents); *Scianneaux v. St. Jude Med. S.C. Inc.*, 961 F.Supp. 2d 808, 811 (E.D. La. 2013) ("The Court has taken judicial notice of the FDA's website" indicating a particular Class III device went through the FDA's premarket approval process).

Recognizing the "undue burdens" imposed by differing state regulations, Congress included within the MDA a "general prohibition on non-Federal regulation" of medical devices in the form of an express preemption clause. 21 U.S.C. §360k; See H.R. Rep. No. 94-853, at 45 (1976). Under Section 360k(a), no state may impose "any requirement" relating to the safety or effectiveness of a medical device that "is different from, or in addition to, any requirement applicable...to the device" under federal law. 21 U.S.C. § 360k(a). It is well settled that "state tort claims," including "duties underlying negligence and strict liability claims, impose 'requirements' with respect to medical devices." *Cenac*, 2009 WL 10678961, at *2.

To determine whether a state law claim is preempted by the MDA, the Supreme Court in *Riegel* established a two-step test. 552 U.S. at 321-22. First, a court must examine whether "the Federal Government has established requirements applicable to" the medical device. *Id*. at 321. If the Federal Government has, the court then must determine whether the plaintiff's state-law claim would impose "requirements with respect to the device that are 'different from, or in addition to'" the federal requirements.  *Id*. at 321-22. If both steps of the *Riegel* test are satisfied, the plaintiff's state-law claim is preempted. *Id*. See *Cenac*, 2009 WL 10678961, at *3 ("State tort claims against manufacturers of Class III PMA medical devices that are not premised on violations of federal requirements impose duties that are 'different from or in addition to' the requirements set forth by the FDA. 'These claims cannot be presented to a jury because, if successful, they would be inconsistent with the federal regulatory requirements.'") (quoting *Gomez v. St. Judge Medical Daig Div. Inc*., 442 F.3d. 919, 933 (5th Cir. 2006).

In analyzing the first part of the two-step test, the Court in *Riegel* gave particular deference to Class III medical devices approved by the FDA through the premarket approval ("PMA") process. *Riegel*, 552 U.S. at 317-319. Once a device receives premarket approval, the FDA forbids the manufacturer from making any changes to the design specifications, manufacturing process, labeling, or any other attribute that would affect the product's safety or effectiveness absent additional FDA approval. *Riegel* at 319.

Because the FDA's premarket approval review is so exhaustive, the Supreme Court has found devices that receive premarket approval to be automatically subject to federal requirements for purposes of the preemption analysis. See *id*. at 322-23; See also, *Bass v. Stryker Corp.*, 669 F.3d 501, 507 (5th Cir. 2012) ("Devices that are approved through PMA procedures automatically satisfy the 'federal requirements' prong.") (citations omitted); see also *Reddick v. Medtronic, Inc.*, 2022 WL 715494 (5th Cir. March 9, 2022); *Stampley v. Allergan USA, Inc*. 2019 WL 1604201(W.D. La. March 15, 2019).

The subject insulin pump is a Class III device subject to the PMA process, received approval on or about June 18, 2018. Accordingly, it is automatically subject to "federal requirements" and thus, the first prong of the *Riegel* test is satisfied.

The second step of the *Riegel* test is similarly satisfied because Plaintiffs' only two theories of liability under the LPLA – alleged design defect and construction/composition defect – are expressly preempted. A state law claim is preempted if it is based on requirements with respect to the device that are "different from, or in addition to," the federal ones and relate to safety and effectiveness. *Riegel*, 552 U.S. at 321-22.

State tort claims brought against manufacturers of Class III PMA medical devices that are not premised on violations of federal requirements necessarily impose duties that are "different from or in addition to" the requirements set forth by the FDA and, as such, are preempted. *Gomez* at 933. Thus, the Court finds that Plaintiff's claims are preempted.

*Sufficiency facts*

Defendant maintains that Plaintiffs' Amended Complaint fails to allege sufficient facts to support any claims under the LPLA.

To state a claim under the LPLA, the plaintiff must establish that: (1) the defendant is the manufacturer of the product; (2) the injury or damage was proximately caused by a characteristic of the product; (3) the characteristic made the product "unreasonably dangerous;" and (4) the damages arose from a reasonably anticipated use of the product. *Stahl v. Novartis Pharm. Corp*., 283 F.3d 254, 260-61 (5th Cir. 2002) (citing La. R.S. §9:2800.54(A). The plaintiff carries the burden of showing that the product was unreasonably dangerous through one of four exclusive theories: (1) defective construction or composition; (2) defective design; (3) inadequate warning; or (4) failure to comply with an express warranty. See La. R.S. §9:2800.54(B); *Stahl*, 283 F3d at 261.

Plaintiff has alleged a design defect. However, with regard to the design defect, the Amended Complaint alleges that the insulin pump was "reconditioned." The Complaint fails to allege any new facts with respect to the design defect and/or whether there existed any alternative design for the insulin pump that was capable of preventing Mrs. Richardson's injuries.  See *Kennedy v. Pfizer, Inc*., 2014 WL 4092918, at *4 (W.D. La. Aug. 15, 2014), which explained that a plaintiff's failure to plead that an alternative design

was available for the product was a necessary element to a design defect claim under the LPLA. Furthermore, Plaintiffs have failed to plead the likelihood that the design of the insulin pump would cause Mrs. Richardson's injuries outweighed the burden on Defendant of adopting the alternative design identified by Plaintiffs. See Louisiana Revised Statute § 9:2800.156(1).

Regarding Plaintiffs alleged defective construction/composition, Plaintiffs must establish that, "at the time the product left [the] manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La. R.S. §9:2800.55.

Plaintiffs predicate their claim of composition/construction defect on the one new substantive allegation added to the Amended Complaint, relying solely on the alleged "reconditioned" nature of the insulin pump with Basal-IQ technology.[8]

The Amended Complaint contains no allegations that the alleged "reconditioned" insulin pump with Basal-IQ technology provided to Kathy Richardson deviated from Tandem's specifications or performance standards for the insulin pump, or from Tandem's otherwise identical insulin pumps. The Amended Complaint makes no mention of what Tandem's manufacturing standards or specifications were for this pump. Furthermore, Plaintiffs fail to plead any "causal connection between the failure of [a] specific manufacturing process and the specific defect in the process that caused" Kathy

---

[8] Doc. 27.

Richardson's injuries. The Court finds that the Amended Complaint fails to allege sufficient facts to support a claim under the LPLA.

<u>**CONCLUSION**</u>

For the reasons set forth above, the Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) (Doc. 28) filed by Defendant, Tandem Diabetes Care, Inc. will be granted dismissing Plaintiff's claims with prejudice.

**THUS DONE AND SIGNED** in Chambers on this 7th day of March, 2023.

**JAMES D. CAIN, JR.**
**UNITED STATE DISTRICT JUDGE**